May it please the Court, my name is Zeena Bhatliwala and I'm appearing on behalf of the Petitioner Didar Singh. Petitioner respectfully requests the Court today to either grant his case or remand the case to the Board of Immigration Appeals because the Board of Immigration Appeals decision and the Immigration Judge's decision was not supported by substantial evidence. You have a wonderful soft voice. Could you turn it up? No, don't touch that. Oh, sorry. Don't worry about that. Just increase the volume a little bit. Okay. Thank you, Your Honor. The Board of Immigration Appeals relied mostly on the Immigration Judge's decision. And it's important to note that the Board of Immigration Appeals specifically found that the Immigration Judge used speculation when she came to her decision in regard to Petitioner's alleged lack of concern for his wife and father. On that note, I'll look at the Immigration Judge's decision and the alleged implausibilities that she brought up because the BIA and Immigration Judge agreed on those alleged implausibilities. The implausibilities can be looked at together in regard to two incidences, one in 1997 and one in 2000. Both incidences are similar factually. Of course, you're aware of the facts. However, I'll look at the facts on three different levels. Petitioner's return to India, the militants coming to his home, and then after that the police shortly thereafter arresting him. The Immigration Judge completely ignored the reasons that Petitioner gave for his return to India. He specifically stated that he decided to return to India upon advice from his wife, who had told him that conditions were more safe and who had told him that police visits had been less frequent. He also testified that the police between 1997 and 2000 would come to the home, take money and leave, probably in the form of a bribe. And he even stated that he was scared to return, but when you haven't seen your wife and children for a period of 10 years and three more, that provides a reasonable reason to go back to India to visit your family, despite the fear that he did actually have. And even in 1990, when his father passed away, he stated that he was too scared to return. The Immigration Judge ignored it. I'm sorry. The one thing that bothers me the most about this record, and that is the declaration that suggests that his parents were in the United States. Well, in fact, do I have the right case? We have lots of cases here. Yes. Yes, Your Honor. And when he said that his father was dead and his mother was in India, and this other person who seemed to be their next-door neighbor seemed to say or former next-door neighbor said they were in the United States. Yes, Your Honor. Well, it would be my belief that the location of his parents wouldn't go to the heart of his claim. Well, but it's really – if in fact he was telling a lie about whether his parents were alive, it does go to something, because what it goes to is his motive for being here, essentially. Understood. If her parents were here, then he'd have a reason to be here other than the story he's telling. Yes, Your Honor. Well, if you – there's two affidavits. One is marked as Exhibit 3 and one Exhibit 4 by the Immigration Judge. One, Nirmal Kaur, and the second one, Exhibit 4, is Balbir Kaur. And that second affidavit, Clause 3, refers specifically to the location of Petitioner's parents. However, the Immigration Judge in her own decision even said that she doesn't know if that clause is referring to the Petitioner himself or to his parents. I can see where that was in the record. Yes. Can you give us the A.R. site for that? Yes. I'm sorry, I don't have it as quickly as I thought. Why don't you give us that slide when you're up for rebuttal? I assume you wanted to save a little time. Yes, Your Honor. Yes, Your Honor. Thank you. That way you can look at a little more. It's part of the Immigration Judge's decision. I do have it. I'm sorry. It's not – I'm not as fast as I'd hoped. The affidavits themselves also refer specifically to the Darsing. And Clause 3 in both of them is in reference to the Darsing. The actual sentences do sound very confusing, and the affidavits are also very poorly written. I – if I may read the sentence, Your Honor? Sure. It's your time. Thank you. The Affidavit of Bell-Beer Court states, Clause 3, that Darsing was born April 2, 1955, of the wedlock of Gurbhachand Singh and Mrs. Udhamkar, who is my presently in USA. So I just – What page of the administrative record? That's 271, Your Honor. This is the actual sentence that the Immigration Judge stated where she stated that she wasn't sure if this was in regard to the Petitioner or to his parents as to the parents' location. Oh, I see what you're saying. So that's why the Immigration Judge herself was also confused. So what your argument is that that paragraph there is referring to your client? In reference to the Darsing, yes, Your Honor. It's just a badly worded sentence by somebody who doesn't know English. Yes. Okay. I was addressing Petitioner's return to India and the reasons that he gave that the Immigration Judge ignored. And she used speculation and failed to ask the Petitioner specific questions about his return to India, such as did he provide for his own protection, did he advise his family and his neighbors about his return and that they should keep it a secret. There were very specific questions that the Immigration Judge could have asked to elicit a response. Sorry? I don't want to beat a dead horse here, but there's actually another affidavit which seems a little less ambiguous. It says that Darsing was born in 1985 out of a wedlock of Gurbakhan Singh and Mrs. Yudham Kaur, who are presently residing in USA. Yes, Your Honor. I'm sorry, Your Honor. I thought the two exhibits that I referred to, Exhibit 3 and 4, those were these. Yes, but you read as 4, which is more ambiguous, it seems to me, than 3. Yes, Your Honor, because that's the only one the Immigration Judge referred to. She didn't actually refer to the affidavit of Nirmal Kaur, which is AR-270. I apologize. Go ahead. What we should we make of the fact generally about changed country conditions that the current president, if I have the title correctly, of the Indian government is a Sikh? Your Honor, the events that took place were in 97 and 2000. And if I may, if he was able to prove past persecution, there would be a presumption of future persecution. But could the government rebut that by showing that country conditions were substantially changed with respect to Sikhs in general? Your Honor, perhaps the government will. But I could, I mean, then I'd just be speaking from personal opinion. I mean, I've still seen cases where there are definitely instances of persecution that are happening in small villages. There's also, within the Sikh community, there's completely different experiences, life experiences. And a lot of Sikhs in India don't even identify with the current prime minister and his beliefs. So it's not as though all Sikhs have the same experience in India or that they are all even politically in line with the current prime minister. Are you saying, then, that there are Sikhs who are still persecuted as a group within the Sikhs? Not Sikhs persecuted by other Sikhs, but Sikhs persecuted by the Indian government. Yes, Your Honor. Okay, you've got a little bit of time left. We'll give you about a minute for rebuttal. We'll hear from the government at this time. Thank you, Your Honor. Thank you. Good morning, Your Honors. May it please the Court. Excuse me. My name is Anne Tumai. I represent the United States Attorney General. The question before the Court is whether the record compels a finding that is contrary to the immigration judge's conclusion that Petitioner failed to satisfy his burden of proof with credible evidence. Now, the immigration judge, as adopted by the Board, his decision was premised on a I take it that one of them was not the declaration that Judge Berzon referred to. Your Honor, it was, actually. The Court refers to pages 54 and 55 of the record. The immigration judge states that there were inconsistencies with both the affidavits. But he didn't actually rely on that for credibility purposes. He relied – excuse me – my understanding is that he relied on it sort of just negatively, i.e., that it didn't help. It was for lack of further corroboration. But he didn't use it as part of the credibility determination. Your Honor, he provided four different areas. And the affidavits were just another area where he had stated that this diminished the credibility of Petitioner's claims. The other areas, aside from the affidavit, and, again, these affidavits were contrary not only in terms of where his parents resided, but, more specifically, the affidavits both indicate that the basis for his detention in 97 and 2000 were not because of the militants, but rather because of his father's affiliation with the Akali doll. In any event, the three other areas that the immigration judge identified that were adopted by the Board involve both his demeanor in terms of how he responded to the questions. That also is an area which Petitioner has not responded to in his brief at all. The judge in his decision specifies that there are problems with the manner in which Petitioner testified, that he was nonresponsive, that in terms of answering questions, he would interrupt a number of times, and that was after being warned a number of times. And what does that have to do with believability? I mean, the I.J. himself says it did not appear that the respondent was simply reciting the information contained in his declaration. So he was interrupting people. What does that prove about his credibility? Your Honor, it goes to his burden of proof to provide credible evidence. In order to satisfy his burden of showing a well-founded fear of persecution, a past persecution, a well-founded fear of persecution, he had to offer specific credible and direct evidence, and that he's trying to provide based on his testimony. And where his testimony is nonresponsive, it suggests at times that there's some question that is raised. Well, you can say that it's nonresponsive, but then you have to establish that in the manner in which he didn't respond, it indicates that he lacks credibility. In other words, a person can be nonresponsive and be nervous. There can be other reasons, but if you look at the manner and means in which he responded and it indicates that he was evasive, then that's something else. And so where in the record does it indicate that? Your Honor, the judge referenced in the context of this argument, it's not so much that it was a premise for the – that he was being evasive as much as it is his burden of showing with specific direct and credible evidence. So that is the process. All you're saying is that because he didn't answer some of the questions, he gave less information than he may have. Correct, Your Honor. That has nothing to do with the credibility determination. Your Honor, it does because in the context of his burden of proof, when we determine whether or not he provided credible testimony, we have to assess whether he's satisfying his burden of proof, and the immigration judge had determined that he did not satisfy his burden of proof. But these seem to me to be apples and oranges. The question – a credibility question is as to what he did say, do we believe it? All right. The next question is if we believe what he did say, did it satisfy his burden of proof? If he was nonresponsive and didn't say certain things that he would have needed, then he might not satisfy his burden of proof, but we would still believe what he did say. Yes, Your Honor. But this is the context in which he also provided nonspecific testimony later on and also testimony that tended to shift based on implausibilities that were pointed out to him. And if we go to the other bases for the immigration judge's credibility assessment and conclusion that he failed to satisfy his burden of proof, we can see this picture or the pieces of this puzzle seem to fall in place a little bit better. I have a question before we move, transition to your next point, and it follows on what Judge Silver asked. Can you point to a specific place in the record where the immigration judge said, you're being evasive, and I noticed you hesitated in responding to that. I noticed you're not responding. Your Honor, if we refer to pages 114, 123 to 23. AR sites? Yes, Your Honor. Okay. Give me the first one. Page 114. Page 123 to 23. Well, let's just look at where on 114? Yes, Your Honor. This is where not, and as I stated earlier, the immigration judge did not say that he was evasive. Rather, the immigration judge stated that you're not responding to the questions and this is going to be problematic in terms of you satisfying your burden of proof with credible evidence. 114 looks like some interruptions, like the witness was interrupting the interpreter. Yes, Your Honor. What he says is that we judge here, if we judge credibility on the number of times that lawyers interrupt us when we're asking questions, the bar would be in big trouble. Yes, Your Honor. But is this anything? Judges interrupt lawyers. Yeah. Your Honor, but the problem is that his interruptions, he would attempt to respond to questions and he did not hear the entire question yet and did not avoid it. This was just one example of the reminder. I'm providing, Your Honor, different examples. This is just the preliminary. And then as it gets further on, it's a matter of this is a repeated practice. Give us your best example. Yes, Your Honor. Of a nonresponsive answer where the I.J. specifically referenced the fact of nonresponsiveness. Your Honor, I have two other examples. Give us the best one of the two. Give us the best one of the two. Your Honor, if you would provide me with a moment so that I may review this. Your Honor, if the Court refers to pages 123 to 25 where they are discussing the affidavit and the immigration judge is trying to clarify some of the problems with the affidavit, the two affidavits, then he – there's an ongoing discussion throughout those pages and the immigration judge instructs the Petitioner to listen to the whole translation before you interrupt. That piece of paper that's in front of you, either somebody has read it to you by word or they've not. It's a very specific question. The question is not whether you think you know what it says or whether somebody has told you what it says. The question is did they read it to you word for word, the whole thing, yes or no. No, no one has read it out to me. Thank you. You have then told me the way it has been written that I was arrested there. It's written about that. Everything is written about that. Police comes to my house, what the police was doing to me. Everything is written about that. Okay, since this has never been read to you in your language, would I be correct in thinking that you don't know what's on here? I know when I was arrested. When I was arrested, is that a yes or a no? I'm saying that they had arrested me. It goes on like that for a while. And it's an example where – Is 123 through 125? Yes, Your Honor. Let me ask you a question. Am I correct in understanding your interpretation of the credibility as it affects this particular case is because the immigration judge gave him an opportunity to establish his burden by asking questions that would have established the burden and he failed to do so, then the immigration judge can conclude from that that he was not credible. Is that what you're saying? Yes, Your Honor, that he is not credible and that he did not satisfy his burden of proving with credible evidence. And he could have. I mean, he should have. He was given the opportunity and he had firsthand knowledge of it, so he could have, and the fact that he didn't indicates that he couldn't and that he was not telling the truth. Is that what you're saying? I'm not sure I understand the question clearly, but what I'm saying is that it appears that he may have, but the immigration judge was trying to assess that. The problem was in his demeanor, in his nonresponsive demeanor, then he, the immigration judge could not have made that assessment. The question is did the petitioner satisfy his burden of showing to the court that he could satisfy this burden of proof. And where the immigration judge does not know what to believe, that falls upon the petitioner, especially here where the petitioner was warned about it. Your Honor, I see my time is up and I wasn't able to address the other areas which I found to be more problematic in terms of his credibility in answering and focusing so much on the demeanor. I'll let you take one more minute. Thank you, Your Honor. The implausibilities here stem from why he returned to India and also the shifts in his testimony as a result of the implausibilities that were identified. He stated on the one hand he was going to go home because he hadn't been there for a long time. First that his wife said that there were many problems, so he thought it was safe. Then when the immigration judge said, but you knew that the police were still looking for you, then he changed it to say that he wanted to see his family. When they pointed out that, well, you had not seen your family in ten years, then he changed it to say that, well, it's because I actually, and then he says, I don't know why it was. I just decided that I should go home. The other implausibilities stem from when he said that he was also explaining that he went home and he decided he would hide. Well, then he states that as soon as he comes home, then within a day after he had been missing for ten years and had not been home for ten years, all of a sudden the militants find him and then a day after that the police find him. Well, then he changes his story. I wasn't really in hiding. I couldn't hide when I was home. Any one of these grounds can be a basis for the, for to have their decision sustained, because under this Court's case law, then as long as one area is substantiated by the record, that would suffice. It's, it's, I know we've said that at times, but it has to be that in context, and anybody making credibility determination, is doing so in the aggregate. If you ask why I don't believe somebody, you take a set of data and you say, well, given all that, I don't believe them. And we have, how do we know that if the IJ had been told, well, those three things are not, are not reasons not to believe him, now just take the other two and tell us, do you still not believe him, what makes us think he'd come to the same conclusion? Your Honor. Most people don't. Most people, when they're making credibility determinations, are looking at a set of circumstances, and if you draw any substantial amount of that away, you may well come to a different conclusion. Your Honor, I understand the dilemma there, and it does seem to make sense, but respectfully, I would submit that you might be in a better position to ask your colleagues, and in reference to that. I know you said it, but I don't know that we've said it in circumstances. It's certainly true that if you take, you know, if the major ones still stand, we can assume that. But if you, but if there are five reasons, you know, a minor one and four major ones, and the four major ones go away and the minor one is left, it's silly to say that the person would have come to the same conclusion. Your Honor, that, this is not the case in this record where Your Honor would have to be concerned with that, because even looking at the whole picture, then, in fact, the cumulatively, it raises some questions as to whether or not he did satisfy his burden of proof with credible evidence. And when one takes a look at the affidavits along with the implausibilities and the lack of specificity in some of his responses, and in fact, there's even some inconsistencies that weren't identified but were included in the record, for example, whether his father was detained a second time with his wife and whether or not he was arrested in March and then afterwards left in February. It doesn't make sense. Now getting into something that is not responsive to the judge's question, and you're way over your time. Yes, Your Honor. She's been very generous with you. Thank you. Thank you for your argument. We'll hear a rebuttal at this time. Put a minute on the clock, please. Thank you, Your Honors. I would like to address the government's argument, however. The administrative record at 55 is the portion that refers to the affidavit of Balbir Corp. You're going to have to speak up, too. The administrative record at 55. Is where the I.J. referred to the affidavits? Yes, of Balbir Corp. It is not clear whether that affidavit, whether Clause 3 is in reference to the petitioner or to his parents. So he ultimately really doesn't rely on it as a credibility matter. He just says it doesn't help. Sorry? He says it doesn't help, but he doesn't rely on it for part of the adverse credibility determination. The immigration judge? Yes. She doesn't. I mean, the immigration judge states that she believes the petitioner was largely consistent and that it does not seem that he was reciting from this declaration. And the implausibilities that the immigration judge pointed out, she didn't even articulate reasons for her disbelief. The government pointed out that the immigration judge said that petitioner's testimony was shifting when implausibilities were pointed out. However, within the administrative record at 96 to 97, that's the only time the immigration judge ever says that testimony was shifting when implausibilities were pointed out. What about the content, though? If you were to look at the record, there's nothing to support other than that position. Is the reference by the immigration judge? To testimony shifting? Look at the entire context of the colloquy between the immigration judge and the petitioner. I don't think his testimony was shifting. I don't think there's shifting testimony when someone says, I went back to see my family, yet I was scared to see my family. I don't think that's shifting testimony. That's just different reasons for a certain action that was taken. The only shifting testimony that the immigration judge points out is administrative record 96 to 97 in reference to whether the petitioner was hiding in his own home. And the petitioner stated that when he came back the second time, he was hiding in his own home. And when questioned about it, he said kind of rhetorically, how can one hide in their own home? And I think what he was trying to say is that he had come home. He was there. He was not he was trying his best not to let people know about his return. And staying home was his version of hiding. All right. Thank you both for your arguments. The case just argued will be submitted for decision.
judges: B. Fletcher, Berzon, Trager